## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| EUGENE BASSE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NO.  09-328-PMF |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

<u>MEMORANDUM AND ORDER</u>

**FRAZIER, Magistrate Judge:**

Plaintiff, Eugene Basse, seeks judicial review of a final decision of the Commissioner of Social Security denying his October, 2005, application for disability benefits.  An Administrative Law Judge (ALJ) denied Basse's application after finding that Basse was not disabled.  That decision became final when the Appeals Council declined to review the ALJ's decision.  Judicial review of the Commissioner's final decision is authorized by 42 U.S.C. § 405(g).

To receive disability benefits, a claimant must be "disabled."  A disabled person is one whose physical or mental impairments result from anatomical, physiological, or psychological abnormalities which can be demonstrated by medically acceptable clinical and laboratory diagnostic techniques and which prevent the person from performing previous work and any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A).

The Social Security regulations provide for a five-step sequential inquiry that must be followed in determining whether a claimant is disabled. 20 C.F.R. § 404.1520.  The Commissioner

must determine in sequence: (1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals one listed by the Commissioner; (4) whether the claimant can perform his or her past work; and (5) whether the claimant is capable of performing any work in the national economy. *Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000). If the claimant does not have a listed impairment but cannot perform his or her past work, the burden shifts to the Commissioner at Step 5 to show that the claimant can perform some other job. *Id*.

Roberts worked as a truck driver and mechanic until he suffered a work-related injury. He has a ninth grade education with some special education classes, and is able to read and write. As noted above, he applied for benefits in October, 2005, claiming that he became disabled on January 17, 2005.

The ALJ evaluated Basse's application through Step 5 of the sequential analysis. He concluded that plaintiff had physical impairments (degenerative disc disease, hypertension, and gastroesophageal reflux disease) and mental impairments (borderline intellectual functioning and a history of a mild adjustment disorder), but that these conditions did not meet or equal one of the impairments listed in the Social Security regulations. The ALJ found that Basse was limited by his ailments but retained the ability to perform a limited range of light-sedentary work and could perform a number of election clerk and assembler jobs (R. 15-23). At the time of the ALJ's final decision, plaintiff was 40 years old.

Under the Social Security Act, a court must sustain the Commissioner's findings if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla" of proof. The standard is satisfied by "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Because the Commissioner of Social Security is responsible for weighing the evidence, resolving conflicts in the evidence, and making independent findings of fact, this Court may not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *Id.* However, the Court does not defer to conclusions of law, and if the Commissioner makes an error of law or serious mistakes, reversal is required unless the Court is satisfied that no reasonable trier of fact could have come to a different conclusion. *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996).

## I.     Deficiencies in the Briefs

Pursuant to this Court's local rules, plaintiff's obligation is to "state with particularity which findings of the Commissioner are contrary to law." The defense is to specifically respond to plaintiff's assertions and arguments. SDIL-LR 9.1(b). On July 15, 2009, the parties were directed to include in their briefs a statement of relevant facts, with citation to the administrative record, and a discussion of the applicable law, with citation to relevant authority. This order directs the parties to point to the relevant portions of the administrative record and present a coherent legal framework for analysis (Doc. No. 12).

Some of plaintiff's arguments are not supported by references to the relevant portions of the administrative record, a discussion of applicable law, or citation to legal authority. The brief filed in response misconstrues some of the arguments and misrepresents one aspect of the administrative record. The deficiencies in the briefs have multiplied the Court's time. Options, including striking the briefs or deeming arguments waived, have been considered. The Court elects to address the issues on the merits to the extent that a legal framework for those issues can be ascertained.

## II.      Questions Posed to Vocational Expert

Basse argues that the ALJ made errors at the evidentiary hearing by posing improper questions to the vocational expert (VE).  Specifically, he claims that the ALJ omitted questions that would have allowed the expert to consider the frequency with which the person described in a hypothetical question needed to alternate between a seated position and a standing position.  He also argues that the ALJ should have specifically identified the length of time the hypothetical person needed to stand.  The Commissioner responds that the vocational testimony reflects the limitations identified by the ALJ.  He also notes that the ALJ decided that Basse could shift positions at will while seated.

Hypothetical questions posed to a VE must include "all limitations supported by evidence in the record."  *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002).  When a person needs a sit/stand option, specific information may help the ALJ determine what occupations the claimant is able or unable to do.  SSR 96-9p.  In particular:

> Alternate sitting and standing: An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically. Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded. The extent of the erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand.  The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing.  It may be especially useful in these situations to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work.

SSR 96-9p.

The ALJ decided that Basse could perform a full range of "light-sedentary" work, reduced by specific limitations: no standing or walking for more than 2 hours of an 8-hour day; no lifting or carrying of objects weighing more than 10 pounds; no climbing of ropes, ladders, or scaffolds; and

– 4 –

no more than occasional climbing of ramps or stairs, stooping, kneeling, crouching, or crawling. Also, Basse was limited to simple, repetitive tasks (R. 22).

The ALJ consulted a VE, who was asked at the hearing to identify jobs that could be performed by a hypothetical person who was restricted to sedentary work, with these specific limitations: lifting, carrying, pushing, and pulling items weighing 10 pounds occasionally, and less than 10 pounds frequently; sitting for 6 out of 8 hours in a workday with the option to sit or stand and the ability to shift positions while seated; standing or walking 2 hours out of an 8-hour workday, with occasional climbing, stooping, crouching, kneeling, and crawling and no exposure to ladders, ropes or scaffolds (R. 61). The VE identified the jobs of election clerk and assembly line fabricator, and explained that those jobs could be performed in a seated or standing position by a person with an IQ of 79 (R. 62-64).

Plaintiff insists that the VE needed more details regarding the extent of his sitting and standing restrictions before he could describe the extent of the erosion of the job base. Because the VE identified specific jobs that could be performed from either a seated position or a standing position, additional details regarding the amount of time the hypothetical person could remain seated or the amount of time the hypothetical person could remain standing were not required in this instance. This argument lacks merit as grounds for remand.

### III.   Residual Functional Capacity Assessment

Plaintiff also argues that the ALJ did not clearly determine his residual functional capacity and contradicted himself by using the term "sedentary" in conjunction with the term "light" while describing work tasks falling into the "sedentary" category. The Commissioner responds that the assessment was clarified with a detailed description of functional limitations and that any error does not warrant reversal or further proceedings.

– 5 –

Residual functional capacity is a function-by-function assessment of an individual's "maximum remaining ability to perform sustained work on a regular and continuing basis." SSR 96-9p. Physical work classifications (sedentary, light, medium, heavy, very heavy) supply a framework for the decision when an individual is able to perform less than a full range of work in a particular classification.

The ALJ's use of "light-sedentary" is curious, considering that the function-by-function assessment squarely puts Basse in the sedentary as opposed to the light category. Even so, the ALJ's use of the term "light" does not suggest that a remand for clarification would lead to a different outcome. Because the purpose of the functional levels has been served, remand is not appropriate. *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989)(declining to remand in hopes of obtaining a "perfect opinion").

## IV.      Credibility Assessment

Plaintiff also argues that the ALJ's adverse credibility assessment was patently wrong. He suggests that his descriptions of daily activities were misquoted, that multiple diagnoses were ignored or overlooked, that a variety of treatments and recommended treatments were overlooked, and that adverse effects of powerful medications were not considered. The Commissioner responds that the ALJ considered the relevant factors and reasonably determined that plaintiff's subjective allegations were not fully credible.

Plaintiff described relentless pain all over, especially in his back and left leg. He rated his pain between a 5 and a 9 on a 10 point scale, and explained that his pain interrupted his sleep. His symptoms worsened with cold weather and were aggravated by physical activity. Sometimes, he had headaches or experienced symptoms of nausea, up to 4 times per week. When his pain was

– 6 –

intense, he had trouble with concentration, preferred to be left alone, and required assistance pulling on socks. He also had a "pins and needles" feeling in his hands, and lost his grip. He took medication for pain and took medication to help with sleep. He sought and received medical treatment, including cervical fusion surgery, epidural injections, and a TENS unit. The surgery improved his mobility but did not reduce the level of pain. He used a recliner and a heating pad and restricted his movements and actions. He could walk, turn a door knob, use utensils to feed himself, and pick up change in a store. He could ride in a car, with breaks needed to get out and walk. He could climb steps, with pain.

In response to questions regarding his activities, Basse said he had recently started reading and had one book. He watched television, walked, shopped, folded laundry, cooked on occasion, dried dishes, visited relatives, and attended his son's sporting events. He tried other activities without much success. He attempted to pull weeds while seated, but could not tolerate that activity for more than a few minutes. He attempted to mow his yard using a riding mower, but was unable to do so for more than 15 minutes (R. 38-59).

The ALJ determined that Basse's testimony was not credible, to the extent that his statements suggested he was unable to perform any sustained work activity. This assessment was based on perceived inconsistencies between plaintiff's testimony about his symptoms and other aspects of the record (R. 16, 19-21).

ALJs have a general obligation to weigh credible medical evidence. *Herron v. Shalala*, 19 F.3d at 333; *Edwards v. Sullivan*, 985 F.2d 334, 337 (7th Cir. 1993). In evaluating the credibility of Basse's statements about his abilities and limitations, the ALJ was required to consider all of the evidence in the record, including objective medical evidence, daily activities, allegations of pain,

- 7 -

aggravating factors, types of treatment, and medication taken.  20 C.F.R. § 404.1529(c)(2)-(4), SSR 96-7p.   In reviewing this aspect of the decision, the Court will defer to an ALJ's determination unless it is "patently wrong."  *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000).

The first argument considered is that the ALJ failed to take into account medical evidence showing that Basse had been diagnosed with intractable pain, failed back surgery syndrome, ulnar neuropathy, bilateral radiculopathy, and sacroiliac joint dysfunction.  The Commissioner responds that the ALJ properly focused on evidence describing Basse's functional limitations rather than evidence describing his various diagnoses.

Plaintiff's argument has merit.  The ALJ discredited some of Basse's testimony without considering all medical information supporting his testimony.  The Commissioner's position confuses the ALJ's assessment of residual functional capacity with the assessment of credibility.  The ALJ based the credibility assessment on perceived inconsistencies, but overlooked Dr. Wade's March 16, 2006, assessment of intractable lumbar back pain; Dr. Wade's March 22 2007, diagnoses of failed back surgery syndrome, bilateral radiculopathy in resolution, and bilateral sacroiliac joint dysfunction; and Dr. Ihnat's May 26, 2005, assessment of ulnar neuropathy (R. 204, 385, 463).

Plaintiff also argues that the ALJ failed to take into account evidence that Dr. Spirtovic prescribed medications (nortriptyline and tramadol) in February, 2007, and formulated a treatment plan for physical therapy three times a week for eight weeks, with a TENS unit (R. 394).  The ALJ overlooked these aspects of Dr. Spirtovic's treatment record (R. 18).  A reasonable ALJ might view Dr. Spirtovic's decision to treat plaintiff's ailment on multiple levels (staggered epidural injections in two locations + medications + physical therapy + a TENS unit) as supporting Basse's statements regarding the nature and intensity of his symptoms.

Plaintiff also argues that the ALJ should have given more credit to his description of the effect of medications. The ALJ compared plaintiff's statements to the medical records and drew the inference that any medication side effects were resolved or diminished by simple adjustment of the dosage. The ALJ's decision to discredit this portion of plaintiff's testimony was not patently wrong. Plaintiff offered inconsistent statements regarding the side effects of his medications (R. 49, 58-59). The lack of consistent remarks supports the ALJ's assessment of this portion of the testimony.

Plaintiff also argues that the ALJ distorted his testimony about his pain and daily activities. Defendant responds that the ALJ could properly consider the activities plaintiff performed without discussing every qualification mentioned at the hearing.

The ALJ related some of plaintiff's statements with accuracy. Other statements pertaining to his symptoms and daily activities were misconstrued or qualifying statements were ignored. For example, when plaintiff described his effort to pull weeds during the summer, he explained that he would "sit on the ground" and work for "two or three minutes" (R. 41). The ALJ gleaned from this testimony that plaintiff could pull weeds while seated (R. 20). As another example, plaintiff testified that he walked a "couple" blocks, with frequent stops, and did not do this on a daily basis (R. 42). The ALJ reported that plaintiff said he was able to walk several blocks at a time (R. 2). The ALJ's overall description of plaintiff's statements and testimony shows that information important to the credibility assessment was not given fair and careful consideration. 20 C.F.R. § 404.1529(c)(3); SSR 96-7p. The ALJ's conclusion that plaintiff engaged in a "wide range of activities inconsistent with his allegation of disability" is not supported by the record (R. 29-59, 140-46).

In sum, portions of the ALJ's credibility assessment are based on error, sufficient to detract from the reliability of that assessment. Evidence that was overlooked or distorted could lead a

reasonable ALJ to a finding that Basse's statements and testimony are consistent with, and supported by, other aspects of the record.

## V.      Consideration of Lines of Evidence

Plaintiff also argues that the ALJ ignored entire lines of evidence and did not explain why that evidence was excluded or rejected.  Defendant responds that the ALJ was under no obligation to mention every piece of evidence and that the omissions may not have changed the assessment of plaintiff's functional limitations.

One of the legal rules governing social security determinations is that ALJs must not select and discuss only the evidence favoring an ultimate conclusion.  *Edwards v. Sullivan*, 985 F.2d 334, 337 (7th Cir. 1993).

As noted in the preceding discussions, the ALJ overlooked evidence supporting plaintiff's disability claim.  When evidence is not discussed, the Court is unable to determine whether the ALJ considered the evidence and assigned weight in accordance with the applicable legal standards.

## VI.     Dr. Wade's Medical Source Statement

Plaintiff also argues that the ALJ failed to develop the record regarding a medical source statement provided by Dr. Wade.  Defendant responds that the argument is not supported by the hearing transcript and that any request for a sentence six remand has been waived.

Dr. Wade was a primary care physician between 2005 and 2007.  He provided and assessment of plaintiff's physical capabilities in May, 2006 (R. 174-76).  Prior to the hearing, documents were collected from Dr. Wade by regular male and facsimile, using a bar code technique to connect documents to this case (R. 317-375, 443-463).  At the evidentiary hearing, plaintiff's counsel  argued, in part, that plaintiff's physical condition met the Social Security Administration's 30-minute sit, 30-minute stand rule.  Counsel specifically referred to Dr. Wade's medical source

statement (R. 64-65).  The ALJ's comments indicate that Dr. Wade's assessment had been submitted and had received preliminary consideration:

ATTY:   And also, the medical source statement from Dr. Wade where he puts him on a 15 minute standing total without interruption, and with a total of two hours in a day and sitting 15 minutes without interruption.

ALJ:   I remember that.  I was wondering where he got that at.

ATTY:   And he states that he can't get through an eight-hour day without lying down.

ALJ:   Right.  That was Dr. – --

ATTY:   Dr. Wade.

CLMT:   James Wade.  He's my primary physician.

ALJ:   When he did that, did he do that on his own or dis he ask you how long you could sit and how long you could stand?

CLMT:   No he did that from all that – – the work hardening thing.

ALJ:   Okay.

CLMT:   He read all that and that's what he decided.  Because I did two of the function capacity things.

ALJ:   Okay, all right, thank you.

(R. 65-66).

The ALJ did not discuss Dr. Wade's assessment in the written decision.  When plaintiff's counsel could not locate Dr. Wade's assessment in the administrative record, he informed the Appeals Council that the document was "referenced at the hearing by both the claimant's counsel and the Administrative Law Judge" (R. 171).  The Appeals Council added the assessment to the record as "additional evidence" but declined to review the ALJ's decision (R. 1, 4).

ALJs are obligated to fully and fairly develop the administrative record.  *See Thompson v. Sullivan*, 933 F.2d 581, 587 (7th Cir. 1993).  The exchange between plaintiff's counsel and the ALJ

strongly suggests that Dr. Wade's assessment was submitted for consideration prior to the evidentiary hearing.  The ALJ was certainly asked to consider that evidence at the conclusion of the hearing.  The most reasonable inference from the materials presented is that the document received preliminary consideration, but was misplaced.  As a result, the document was not reviewed or evaluated when the ALJ made a decision.

Where an administrative error prevents an ALJ from considering important evidence relevant to the issues presented, the Court will not review the evidence but will remand to allow an ALJ to evaluate the evidence.

**VII.    Conclusion**

The Commissioner's decision regarding Eugene Basse's October, 2005, application for disability benefits is not based on fair consideration of all relevant evidence.  The decision is REVERSED and REMANDED for further proceedings and a new decision.  On remand, the ALJ shall evaluate all evidence describing the nature of plaintiff's ailments and the treatment provided during the relevant period, as well as medical opinions regarding plaintiff's functional abilities and limitations.  The ALJ shall reevaluate the credibility of plaintiff's statements regarding the intensity, frequency, and severity of his symptoms and the effect those symptoms have on his ability to perform work tasks on a sustained basis.  The ALJ shall reconsider plaintiff's residual functional capacity and ability to perform a significant number of jobs in the economy.

**SO ORDERED.**

**DATE:   June 21, 2010   .**

   **S/ Philip M. Frazier**
**PHILIP M. FRAZIER**
**UNITED STATES MAGISTRATE JUDGE**